UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:15-cr-20170-KMM

UNITED STATES OF AMERICA

v.

RAUL SOSA and MAURA SOSA,

       Defendants.
_____/

**ORDER DENYING DEFENDANTS'
JOINT MOTION TO SUPPRESS STATEMENTS AND REQUEST FOR A HEARING**

This cause is before the Court on Defendants Raul Sosa and Maura Sosa's Joint Motion to Suppress Statements and Request for a Hearing (ECF No. 52).[1]  For the reasons discussed below, the Motion to Suppress is granted in part and denied in part.[2]

**I.   BACKGROUND**

Defendants Raul Sosa and Maura Sosa are named in a seven-count indictment charging them with criminal tax offenses.  The scheme centers around the filing of fraudulent tax returns for years 2004 through 2008.  The returns in question comprise both the corporate income tax returns for Accion 1 Auto Sales, Inc., the closely held corporation solely owned by co-Defendant Maura Sosa and jointly operated and controlled by the Sosas, and the Sosas' individual income tax returns.

---

[1] Although the Defendants have filed a joint motion, Defendant Maura Sosa does not have standing to challenge the admission of her co-defendant's statements, *see United States v. Escobar*, 50 F.3d 1414, 1422 (8th Cir. 1995) (holding a defendant's Miranda rights are personal and a co-defendant lacks standing to assert an alleged violation as a defense), which, as explained in footnote 2 below, are the only statements subject to suppression.

[2] The motion is granted in part only because a suppression hearing on the motion was held on November 2, 2015.  The motion is otherwise denied.

Count 1 charges the Sosas with conspiring to defraud the Internal Revenue Service ("IRS") from January 1, 2004, through February 3, 2011. Counts 2–7 charge the Sosas with substantive tax offenses for tax years 2007 and 2008 relating both to their corporate and individual income tax returns.

## II.   DISCUSSION

The Motion to Suppress raises constitutional challenges to two separate events.[3] The first event is a February 2009 interview between IRS agents and Defendant Raul Sosa. The second event is a June 2010 customs inspection of Sosa and his family at Miami International Airport. Sosa argues that on both occasions government agents violated his Fifth Amendment rights by interrogating him in a custodial setting without first securing a knowing and voluntary waiver of his *Miranda* rights.

As discussed more fully below, these arguments are without merit. Because Sosa was never in custody for purposes of *Miranda*, government agents had no duty to secure a knowing and voluntary waiver of his *Miranda* rights before questioning him. Sosa's request to suppress is therefore denied.

### A.   February 2009 Interview Between IRS Agents and Sosa

Sosa first moves to suppress statements he made to IRS agents in February 2009 during an interview at his place of business.

---

[3] The motion actually includes a third event: a May 2009 interview between IRS agents and Defendant Maura Sosa. The Court need not address this incident, however, as the Government does not intend to offer any evidence relating to this event at trial in its case-in-chief. Accordingly, the Court will only address Raul Sosa's challenges to the first and second events.

*1.     Facts*

On February 17, 2009, three agents from the IRS traveled to Sosa's place of business, a salvage yard located in Hialeah, Florida.[4]  At the time, Sosa was the subject of a criminal tax investigation.  The agents planned to ask Sosa questions about his personal tax returns for tax years 2003 to 2007.  The agents did not schedule this interview in advance.

The agents arrived at Sosa's business around 10:30 a.m.  Each of the agents was dressed in business attire.  Although each agent was armed with a gun, the guns were concealed.

Upon arrival, the agents identified themselves as special agents with the IRS and showed Sosa their credentials.  An agent told Sosa that he was the subject of an investigation.  The agent then read Sosa the IRS's "Non-Custody Statement of Rights."  The statement of rights reads as follows:

> **Non-Custody Statement of Rights**
>
> (At the outset of your first official meeting with the subject of an investigation, identify yourself as a special agent of the IRS and produce authorized credentials. THEN STATE:)
>
> As a special agent, one of my functions is to investigate the possibility of criminal violations of the Internal Revenue laws, and related offenses.  In connection with my investigation of your tax liability (or other matter), I would like to ask you some questions.  However, first I advise you that under the 5th Amendment to the Constitution of the U.S., I cannot compel you to answer any questions or to submit any information if such answers or information might tend to incriminate you in any way.  I also advise you that anything which you say and any documents which you submit may be used against you in any criminal proceeding which may be undertaken.  I advise you further that you may, if you wish, seek the assistance of any attorney before responding.  Do you understand these rights?

During the interview, agents showed Sosa his Form 1040 personal tax returns for the years 2003 to 2007.  Sosa reviewed each of the returns and confirmed his and his wife's signatures as authentic.  Sosa said that the income listed for him and his wife was accurate.

---

[4] The following facts relating to the February 2009 interview are based on the evidence elicited at the November 2, 2015, suppression hearing.

Sosa then asked that the agents speak with his attorney. After Sosa hung up with his attorney, one of the agents asked him if he was terminating the interview based on advice from his attorney. Sosa said that he was. The agents thanked Sosa for his time and told him that they would be in touch with his attorney. The agents then left Sosa's place of business. The interview lasted approximately one hour.

### 2. Analysis

Based on these facts, Sosa was not in custody for purposes of *Miranda*. Under *Miranda v. Arizona*, 384 U.S. 436 (1966), a government agent must notify a person about his or her right against self-incrimination if the person is in custody and being interrogated by a government agent. The test to determine whether a person is in custody is whether "a reasonable man in the suspect's position would feel a restraint on his freedom of movement to such an extent that he would not feel free to leave." *United States v. Brown*, 441 F.3d 1330, 1347 (11th Cir. 2006). When assessing whether a defendant is in custody, a court should consider the (1) location of the questioning, (2) duration of the questioning, (3) statements made during the interview, and (4) release of the interviewee at the end of the questioning. *Howes v. Fields*, 132 S.Ct. 1181, 1189 (2012). Other factors include whether the government agent (5) brandished a weapon, (6) touched the suspect, (7) physically restrained the suspect, (8) used language or a tone that indicated that compliance with the officers could be compelled, or (9) unambiguously advised the suspect that he was free to leave and was not in custody. *United States v. Colon*, 579 F. App'x 791, 793 (11th Cir. 2014).

These factors weigh heavily in favor of a non-custodial finding in this case. The interview took place at Sosa's place of business, a factor which is particularly relevant to the custody analysis. *See Brown*, 441 F.3d at 1348 (observing that "courts are much less likely to

find the circumstances custodial when the interrogation occurs in familiar or at least neutral surroundings"). The interview was short, lasting about an hour. It was not until the very end, after he spoke with his attorney, that Sosa indicated his unwillingness to continue with the interview, at which point the agents terminated the interview. The agents did not arrest or otherwise restrain Sosa at the end of the questioning. Nor did they brandish their weapons, touch Sosa, physically restrain Sosa, or use anything but a conversational tone during the interview. Lastly, at the outset of the interview, an agent read Sosa the IRS's "Non-Custodial Statement of Rights." Although the statement did not expressly inform Sosa that he was free to leave, it implied as much insofar as it informed him that he did not have to talk to the agents. Nevertheless, Sosa told the agents that he understood his rights and continued to speak with them.

Because these factors show that Sosa was not in custody, his motion to suppress the statements he made to the IRS agents in February 2009 is denied.

  **B.**  **June 2010 Customs Inspection**

Sosa next moves to suppress statements he made in June 2010 to a Customs and Border Protection ("CBP") officer at Miami International Airport.

  *1.*  *Facts*

On June 20, 2010, Sosa and his family (wife and co-defendant, Maura Sosa, and two minor children) arrived at Miami International Airport from Jamaica.[5] After the family presented their customs form, customs officers referred the family to "secondary" customs inspection.

---

[5] The following facts relating to the June 2010 incident are based on the evidence elicited at the November 2, 2015, suppression hearing.

A CBP officer arrived to perform the secondary inspection. The officer, like all on-duty customs officers working in customs enforcement, was wearing a uniform and was visibly armed. The officer asked for and received the family's customs form. A standard question on this form asks residents to list the total value of all goods purchased or acquired abroad. No goods were listed on the Sosas' form. The officer asked Sosa if he or his family had anything to declare. He said that they did not.

The officer then inspected the family's luggage. During the inspection, the officer discovered empty Rolex boxes. When the officer asked Sosa where the Rolexes were, Sosa said something to the effect of, "I don't have to tell you shit." The officer told Sosa that if he bought the Rolexes abroad, he would owe duty on the Rolexes. Sosa said that he "made a million dollars a year," and that if he wanted to give his kids a gift, he could do so. The officer asked Sosa if he had receipts for the Rolexes. Sosa said that he did not.

At that point, the officer left Sosa and went to see Sosa's children. He noticed that each child was wearing a Rolex. The officer asked for the Rolexes and the children turned them over.

After obtaining the Rolexes, the officer spoke with his supervisor about the issue. The supervisor said that if receipts could not be produced, the officer should look the Rolexes up on the internet to determine their price and use that price to calculate the duty. The officer did so.

The officer then explained to Sosa that if the receipts could not be produced, he would use the prices he had found online to assess a duty. In response, Sosa produced the receipts for the watches. The officer told Sosa that he would have to pay a penalty fee if he wanted to keep the watches. Sosa paid the penalty and kept the watches. Sosa and his family then left the airport.

Throughout the inspection process, which lasted about an hour and a half, Sosa did not ask to leave or request an attorney. Nor did the officer tell Sosa that he was under arrest or physically restrain Sosa. Sosa was also in continual physical or constructive possession of his luggage and wallet.

    2.    *Analysis*

Based on these facts, Sosa was not in custody for purposes of *Miranda*. The *Miranda* rule has a special application in the context of questioning at the border. "[B]ecause of the sovereign interest in securing entry points to the United States, some degree of questioning and of delay is necessary and is to be expected at entry points." *United States v. Jayyousi*, 657 F.3d 1085, 1109 (11th Cir. 2011). As a result, "questioning at the border must rise to a distinctly accusatory level before it can be said that a reasonable person would feel restraints on his ability to roam to the degree associated with formal arrest." *Id*. Here, the CBP's interview of Sosa was non-custodial in nature. The officer conducted a routine secondary customs inspection of the Sosa family. When the officer discovered the Rolex boxes and the Rolexes, he took the steps required to document and assess the customs penalty. Critically, the officer never physically restrained Sosa, advised him that he was not free to leave, or told him that he could not contact anyone, including an attorney. And at no point did Sosa himself ask to leave or to contact anyone. In short, the officer's questioning was not distinctly accusatory." Rather, the purpose of the questioning was to assess the necessary duty and penalty.

Because the CBP officer's questioning never reached a distinctly accusatory level, Sosa's motion to suppress the statements he made in June 2010 is denied.

**III.     CONCLUSION**

For the foregoing reasons, the Joint Motion to Suppress Statements and Request for a Hearing (ECF No. 52) is granted in part and denied in part. It is granted only to the extent that a suppression hearing on the motion was held on November 2, 2015.

Done and ordered in Chambers at Miami, Florida, this 5th  day of November, 2015.

 

K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE

cc:     Counsel of record